**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Pablo Villareal ACOSTA, Defendant-**
**Appellant.**

**No. 26843.**

United States Court of Appeals
Fifth Circuit.

May 22, 1969.

Phillip D. Hardberger, Odessa, Tex., for defendant-appellant.

Ted Butler, U. S. Atty., Ray Caballero, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before BELL and THORNBERRY, Circuit Judges, and CHOATE, District Judge.

BELL, Circuit Judge:

This appeal is from a judgment of conviction entered after a non-jury trial finding the defendant guilty of violating the narcotics laws. Title 21 U.S.C.A. § 174.

One assignment of error centers on the admissibility of evidence seized at the time the defendant was arrested and searched. This issue was raised by a motion to suppress which was denied. A directed verdict of acquittal was due if the evidence in question, the heroin and photographs of the defendant with the heroin, was inadmissible. The other assignment of error is based on the failure of the trial court to require the Government to give defendant the name and address of an informer. We affirm.

With respect to the search and seizure, the Government urges validity on two grounds: One, a border search; and two, probable cause. Finding probable cause, we pretermit decision on the border search theory.[1]

The facts giving rise to a finding of probable cause were that a customs agent received information at about 10:00 A.M. on May 28, 1968 from an informer that a quantity of heroin was to be smuggled into the United States from Ojinaga, Mexico. The informer described the smuggler as a young Mexican male driving a 1958 green and white Buick bearing Texas license plate CVY 94. The informer was not certain where the smuggler would take delivery, i. e., in Ojinaga or in Presidio, Texas, across the border

from Ojinaga. He stated that the suspect might take delivery in Presidio. At 10:30 A.M. the agent in charge notified the Deputy Sheriff at Presidio to be on the lookout for such a car.

At 12:45 P.M. on that day the same agent was given additional information by the informer with respect to delivery. It was that the same smuggler had met with a dealer from Ojinaga in Presidio and that he had departed in the described vehicle for Marfa, Texas. The fair inference from the testimony of the agent was that the delivery took place in Presidio and that the meeting with the dealer took place between 10:00 A.M. and 12:45 P.M. At 3:00 P.M. the agent, assisted by two Border Patrol Inspectors, stopped the defendant eight miles south of Marfa on the road from Presidio. He was searched and one ounce of heroin was found on his person.

## I.

Defendant urges that he was arrested when stopped and that the search was incident to the arrest. We apply the same probable cause test, whether the matter be viewed as a warrantless search or as a warrantless arrest with a search incident thereto.

We take the test from decisions of the Supreme Court. In Beck v. Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, the Court said:

"There are limits to the permissible scope of a warrantless search incident to a lawful arrest, but we proceed on the premise that, if the arrest itself was lawful, those limits were not exceeded here. * * * The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause

1. Defendant argues the invalidity of the border search on the basis that the record is devoid of evidence of a border crossing. Cf. Bailey v. United States, 5 Cir., 1967, 386 F.2d 1, 3; and King v. United States, 9 Cir., 1965, 348 F.2d 814, 816.

to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. * * * 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' Brinegar v. United States, supra, 338 U.S. [160] at 176, [69 S.Ct. 1302 at 1311,] 93 L.Ed. [1879] at 1891." 379 U.S. at p. 91, 85 S.Ct. at p. 225.

\* \* \* \* \* \*

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555, 39 A.L.R. 790. * * * * " 379 U.S. at 96, 85 S.Ct. at 228.

The Court held the warrantless arrest and subsequent search in *Beck* invalid on the ground that the evidentiary basis for probable cause was insufficient. The essence of the record was that the arresting officers had received information from an informer that the defendant was engaged in a lottery operation. The court noted the lack of evidence that the informer had said that the defendant would be found at the time and place of arrest. The arresting officers knew only what the defendant looked like and that he had a record as a gambler. There was no evidence as to what the informer actually said or why the officers thought the tip from the informer was credible. The Court adverted to Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, as a case of a similar na-

ture where the evidence of probable cause was sufficient.

In *Draper,* a narcotics case, the arresting officers acted on information received from an informer. There was proof that he had given reliable information in the past. He stated that the defendant had taken up residence at a specified address in Denver and was selling narcotics. He further stated that the defendant was going to Chicago to obtain narcotics and would be returning to Denver on one of two trains. This, in fact, happened and the defendant was arrested as he left one of the trains. The informer had given the officers a description of the defendant by color, age, height, and weight. He had also described defendant's dress and the fact that he would be carrying a tan zipper bag. The description, including dress and the bag, turned out to be correct. This was held to be probable cause for the warrantless arrest and search which produced the narcotics.

The instant case is of the *Draper* type. Here there was only a general description of the defendant but a specific description of the vehicle including the license number. The first tip from the informer was that the heroin would be smuggled but he was not certain as to the delivery point. The next tip, some two to three hours later, confirmed the delivery and the route of travel. This resulted in the agent being on the lookout on a specified route for a vehicle of specific description being driven by a young Mexican male. At the time of interception every fact stated by the informer except the presence of the heroin was verified. The arrest and search followed. This was the precise case in *Draper*. In addition, here as in *Draper,* there is ample evidence of the reliability of the informer, the agent having testified as to previous use of the informer and of his reliability in those instances.

The question remains whether the supervening decisions of Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; and Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.

Ed.2d 773, dictate a different result. Both were search warrant cases. The warrant in each case was held invalid.

In *Aguilar* the search warrant was issued on the affidavit of police officers that they had received reliable information from a credible person that narcotics were being kept at certain premises. The Court pointed out that this affidavit was insufficient for the purpose of the magistrate making an independent judgment of the showing of probable cause. It was necessary for the magistrate, under the circumstances, to accept without question the informer's "suspicion", "belief", or "mere conclusion" as the case might be. The court pointed out that the magistrate had to be informed of some of the underlying circumstances from which the informer concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informer was reliable.

The Court granted certiorari in *Spinelli* to explicate the principles of *Aguilar*. There the affidavit which was the basis of the action of the magistrate in issuing the search warrant was based in part on the statement that the FBI had been informed by a confidential reliable informant that the defendant was engaged in a gambling operation by means of two specified telephones in a designated apartment. The Court concluded that it was necessary for the affiant, an FBI agent, to include some factual statement in the affidavit to support his conclusion that the informer was reliable. This was deemed to be one prong of *Aguilar*. The other prong, and here the Court found an even greater defect, was that the affidavit had to contain a statement of the underlying circumstances from which the informer concluded that the defendant was running a bookmaking operation. Absent such a statement, the Court said that it was " * * * especially important that the tip described the accused's criminal activities in sufficient detail so that the magistrate may know that he [the informer] is relying on something more substantial than a casual rumor * * *." The Court went on to state that such detail was present in the *Draper* case. The detail given by the informer in *Draper* would have been sufficient to permit a magistrate to infer that the informer had gained his information in a reliable way. The Court described the informer's detailed description in *Draper*, together with the fact that the defendant was on the train just as the informer stated he would be, as being a report of the sort which in common experience may be recognized as having been obtained in a reliable way and thus sufficient to establish probable cause. This detail meets the test of the second prong requirement of *Aguilar*.

We conclude that the case here falls within the aegis of *Draper*. Thus there is no merit in this assignment of error.

## II.

The other assignment of error is the contention that the court erred in denying the request of defendant for the name and address of the informer. This contention is also without merit. There was no showing as in Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, that the identity of the informer was relevant to the defense on the merits. There was in fact no defense here other than the motion to suppress. There was no showing whatever that the informer played any part in the transaction with which the defendant was charged. See McCray v. Illinois, 1967, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; Rugendorf v. United States, 1964, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887; and Lira-Ortega v. United States, 5 Cir., 1968, 401 F.2d 506, 507. See also the dictum in Aguilar v. Texas, 378 U.S. at 114, 84 S.Ct. 1509.

Affirmed.