**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Luis Felipe SANCHEZ, Defendant-Appellant.**

**No. 26958.**

United States Court of Appeals Fifth Circuit.

July 2, 1969.

Rehearing Denied July 30, 1969.

Alfred M. Carvajal, Carvajal & Lieberman, Miami, Fla., for defendant-appellant.

Theodore Klein, Asst. U. S. Atty., William A. Meadows, Jr., U. S. Atty., Robert L. Steuer, Asst. U. S. Atty., Miami, Fla., for appellee.

Before BROWN, Chief Judge, DYER, Circuit Judge, and HUNTER, District Judge.

DYER, Circuit Judge:

Sanchez appeals his judgment of conviction entered upon a jury verdict on one conspiracy and two substantive counts of importing, possessing and purchasing a narcotic drug in violation of 21 U.S.C.A. § 174 and 26 U.S.C. § 4704. He urges reversal on the ground that he was arrested without probable cause, and that evidence obtained by a warrant-less search and seizure was inadmissible. We affirm.

On June 8, 1968, Prado was arrested as he attempted to smuggle in excess of one million dollars' worth of cocaine, concealed in clothing specially fitted for that purpose, through Customs at the Miami, Florida, International Airport. Prado agreed to cooperate with Customs. Although he did not know the name of the

man who equipped him with the special clothing containing the cocaine, Prado described the appearance of his source with great particularity. He was in his late forties and had a dark complexion and dark wavy hair. He always wore sun glasses with gold trim across the top and tortoise-shell trim on the bottom. He also wore a wristwatch with a wide gold band on his right wrist and a part of one of his fingers was missing. Customs later learned that the man's name was Grijalva. Prado told Customs agents that as soon as he successfully entered the United States he was to signal his source by sending a telegram to a person by the name of Julio Munoz in Guayaquil, Ecuador. Prado was to then take a room at the Ponce de Leon Hotel on Flagler Street in Miami. He was to make contact with his source by walking up and down Flagler Street during the morning hours. The cocaine, according to Prado, was to be delivered to a Cuban. Under the direction of Customs agents the telegram was sent. Prado was given a room in the Ponce de Leon and the agents took an adjoining room. Prado walked Flagler Street as instructed by his source all the while being under the surveillance of the agents.

At approximately 9:40 A.M. on June 12, 1968, an agent followed Prado out of the Ponce de Leon and down Flagler Street. Prado turned and faced the agent and then walked up to and started talking with a man who in every particular fitted the description given by Prado. The complexion, age, hair, watch, gold and tortoise-shell sun glasses, and missing finger all checked out. The man, Grijalva, and Prado talked a short time and then crossed Flagler Street and went into a drug store. There, for the first time, the agent observed the appellant, Sanchez, as he talked with Grijalva. This meeting added credibility to Prado's

story that he did not know the identity of the "Cuban" to whom the cocaine would be passed but that Grijalva did. In a short time Prado, Grijalva and Sanchez recrossed Flagler. Once on the other side, Grijalva turned to walk toward the Ponce de Leon and Prado turned to go with him. Grijalva motioned for Prado not to follow him but to go with Sanchez. Sanchez simultaneously motioned for Prado to accompany him in the opposite direction. The Customs agents were then faced with a dilemma. They had to stay with Prado and Sanchez because Prado had not passed the cocaine which he had ostensibly been successful in smuggling into the country and they also had to stay with Grijalva to make sure that he didn't escape. The agents therefore split, one followed Grijalva back to the Ponce de Leon Hotel and eventually arrested him along with Dante, who was found to be in possession of cocaine, and other agents followed Prado and Sanchez for several hours as the two men walked around Flagler Street and stopped for something to eat. On one occasion an agent walked up to arrest Sanchez, but Prado waved him away.

Finally the agents observed Prado and Sanchez going into the Ponce de Leon Hotel. As Prado and Sanchez prepared to enter their rooms, which were on the same floor and were across from each other, Prado turned in the direction of the agents who had been following and raised his head and eyes back toward Sanchez. Sanchez, who had started to enter his room, was arrested. A search of his room revealed a corset and swimming trunks and the cocaine valued in excess of $1,000,000.[1]

 Sanchez contends that Customs did not have probable cause for his warrantless arrest because prior to his arrest on June 12, 1968, his identity was un-

---

1. The special clothing found in Sanchez' room was the same type worn by Prado. The clothing consisted of a tight-fitting vest or corset to be worn around the waist. Both sets of clothing were fitted with pockets sufficient to carry 19 bags of cocaine. Both Prado and Sanchez were found to be in possession of 19 bags of high grade cocaine. The cocaine found on Prado was of slightly higher quality than that found in Sanchez' hotel room. The total value of the 38 bags of cocaine was in excess of $2,000,000.

known and he had not been observed engaging in any unlawful activity. We disagree. Neither identity nor unlawful activity are per se prerequisites to probable cause. We are unwilling to ignore the reality of the events preceding Sanchez' arrest and conclude that the Customs agents had probable cause to believe that Sanchez was committing or had committed an offense in violation of the Narcotics Control Act.

While mere suspicion clearly does not measure up to probable cause, Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, and an arrest may not be justified by what is seized thereafter, Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, nor may an arrest be used as a mere pretext to search for evidence of a crime, the evidence here is of such a substantial nature that it would justify a person of reasonable caution to believe that a felony has been committed, and thus the requirement of probable cause is met. Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); Johnson v. Middlebrooks, 5 Cir. 1967, 383 F.2d 386. Considering all of the circumstances surrounding the particular arrest, we think that the Government has clearly met its burden in showing probable cause. Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; United States v. Acosta, 5 Cir. 1969, 411 F.2d 627; Johnson v. Middlebrooks, supra.

Prado proved to be reliable in every respect. He was carrying over a million dollars of cocaine on him when he was arrested. Aside from the sheer enormity of the discovery, it was significant for another reason. The cocaine illegally imported into this country from South America usually proves to be about fifty-five percent pure. Recently the percentage of purity had been running slightly higher. Once in this country, the cocaine is cut by the local pushers and sold to addicts at about ten percent pure. The cocaine found on Prado was approximately ninety percent pure. Ordinary pushers or addicts would never be in possession of almost pure cocaine. This justified the Customs officers' belief in Prado's story that he had received the cocaine directly from the source and that the source was coming to Miami to participate in the passing of the cocaine to a Cuban. His description of Grijalva proved to be entirely accurate. Prado was to deliver to a Cuban whose identity he did not know but whose identity was known to Grijalva. Grijalva contacted Prado and they later met with Sanchez. When they broke up both Sanchez and Grijalva gestured for Prado to go with Sanchez. Upon Prado's cue, Sanchez was arrested. As in *Draper*, the description, the place, and the method of contact all checked out with Prado's information. The arrest of Sanchez was made only after the agents had coupled the information they had received from an informant who had proved to be reliable with their own observations.

In United States v. Acosta, *supra*, the agents had information from a reliable informant concerning an attempt to smuggle heroin into the United States. The car the smuggler was driving was described with great particularity, but the description of the driver was rather vague and uncertain. In the case *sub judice*, the description of Grijalva was extremely detailed, but the description of the man to whom the cocaine was to be delivered was somewhat vague. Still, in *Acosta* the Court found that taking the underlying circumstances into consideration, the requirement of probable cause was met.

Beck v. Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, teaches that probable cause is a practical, nontechnical concept, which depends upon the balancing of the interest of law enforcement to effectively do its job and the interest of private citizens to be free from Gestapo methods on the part of police. We entertain no doubt that on balance here the information which the Customs offi-

cers had from Prado coupled with their own observations gave them probable cause to believe that Sanchez was violating the Narcotics Control Act. The seizure of the cocaine resulting from the search of his room was proper and the cocaine was admissible in evidence.

Affirmed.