**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dennis Edward DREW and James Edward Gipson, Defendants-Appellants.**

**No. 29527.**

United States Court of Appeals, Fifth Circuit.

Dec. 28, 1970.

Rehearing Denied Feb. 16, 1971.

Pat Gardner, San Antonio, Tex. (ct. Appt.), for appellants.

Dennis E. Drew and James E. Gipson, pro se.

Jeremiah Handy, Asst. U. S. Atty., Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., for appellee.

Before JONES, GEWIN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

During the early morning hours of July 26, 1969, United States Customs officers arrested Herbert Ray McDaniel, Dennis Edward Drew, and James Edward Gipson at the San Antonio International Airport. Each was charged with violating various parts of the federal narcotics laws. An informer's tip was the first link in the chain of events which lead to their arrest and subsequent conviction, but additional links of credibility were fused to the informer's information by competent police surveillance. Because we find that there were sufficient independent observations by the arresting officers to corroborate the details of the tip and thus negate the possibilities that the informer fabricated his report or passed on unreliable rumor, we affirm the judgment of the district court.

I. BACKGROUND AND ISSUES.

On July 24, 1969, an informant contacted Leonard Williams, an agent with the United States Customs Bureau. This informant had been known by Agent Williams for approximately one year and had supplied correct and reliable information in the past. Williams had personally investigated some of the informer's previous tips and had found them to be true. Additionally, Williams knew that the informant's information had lead to two previous successful convictions.

At the time of the initial contact, the informant indicated that there were three Negro male subjects in Laredo from Kansas City and that they intended to acquire a large quantity of narcotics. The informer was also of the opinion that the men had been in the area before, at which time they had accepted delivery of narcotics in the San Antonio area. The following morning the informant called again, adding additional specifics. The subjects, he related, were staying at the Sands Motel in Laredo and were driving a black, 1969 Cadillac.

Agent Williams, with another agent, hastened to the Sands, where they verified the presence of such an automobile. Additional credence was given to the story since the car bore Missouri license plates. Surveillance was not established, however, until a third call came from the informant, who this time stated that the subjects were attempting to acquire a pound of narcotics and twenty pounds of marijuana, that they were planning to depart that evening, and that it was unknown if the subjects already had the narcotics or would take delivery at a point away from Laredo.

Shortly after surveillance was established, the suspects departed the Sands for approximately an hour, during which time an agent of the Customs Bureau was unable to follow them. After returning to the Sands, the subjects then departed for San Antonio, the city which the informant had previously linked to the suspects' drug trafficking.

Surveillance continued to San Antonio and in San Antonio until arrest, except for two occasions when the three defendants entered the Holiday Inn, for 5 to 10 minutes on one occasion and three to eight minutes on another. It was further stipulated that during this surveillance nothing was taken from the automobile nor placed in it except an attaché case which defendant Gipson carried with him, in and out, on his second entrance of the Holiday Inn.

At the San Antonio Airport, McDaniel, Drew and Gipson were arrested —McDaniel, in the car outside the terminal, Drew and Gipson inside the terminal. A search of the automobile revealed it contained 258.85 grams of heroin and twenty-three bags containing approximately twenty pounds of mari-

juana, as well as a pistol; heroin was discovered on Drew's person and a pistol was found in the attaché case he was carrying; a partially made marijuana cigarette and a small packet of marijuana were found on Gipson.

Drew, Gipson and McDaniel were indicted jointly by the Grand Jury; the indictment generally charged the three with illegal importation of and trafficking in heroin on which the tax had not been paid and possessing firearms during the commission of a felony.[1] All three pleaded not guilty; McDaniel later changed his plea to guilty and he did not appeal his conviction and sentence.

Defendants Drew and Gipson made a motion to suppress all evidence, claiming the same had been obtained in the search which was incident to an illegal arrest. On October 15, 1969, evidence and arguments were heard on these motions. During this hearing the district judge sustained the objections of the government to questions which would have lead to the identity of the informer. After the close of the evidence and argument, the court held that there was probable cause for arrest and denied their motion to suppress.

On October 21, 1969, the defendants filed a motion *in limine* to preclude the government from placing the seized marijuana into evidence; this motion was also denied. In November, trial was held to the court, which found Drew and Gipson guilty on all counts and sentenced them accordingly.[2]

In this appeal Drew and Gipson allege three bases of error: the trial court erred in denying their motion to suppress evidence obtained as a result of an illegal search and seizure; the trial

court erred in limiting cross-examination concerning how the informant acquired his information; and, the trial court erred in admitting against appellant Gipson the seized marijuana. All three assignments of error are without merit.

## II. ILLEGAL SEIZURE

Drew and Gipson contend that the heroin found in the car and on the person of Drew, the revolver found in Drew's attaché case, the twenty-three bags of marijuana found in the automobile, the partially smoked marijuana cigarette found on Gipson's person, and several additional items seized incident to the arrest could not be admitted into evidence against them since the arrest was made without a warrant and without probable cause.

■ It is undisputed that an informer's tip can play a part in establishing probable cause. Such was the situation in the case at bar. While it is true that proof was not adduced in open court as to how the informant obtained his information, Agent Williams did offer a factual basis for the informant's reliability. Moreover, in the absence of a statement detailing the manner in which an informant came by his information, an informant's tip can still remain viable if it describes the accused's criminal activity in sufficient detail so that the arresting officers may know that the informant is credible and is relying on something more substantial than casual rumor or the general reputation of the accused. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides an important legal benchmark for gauging the adequacy of detail necessary to constitute probable cause, which

1. Specifically, the indictment charged violations of 21 U.S.C.A. § 174 (1961), which deals with the illegal importation of narcotics; 26 U.S.C.A. § 4704(a) (1967), which deals with tax regulation of narcotic drugs; 18 U.S.C.A. § 924(c)(2) (1970 Supp.), which deals with the possession of firearms during the commission of a felony; and, Title VII of the Omnibus Crime Control and Safe

Streets Act of 1968, Pub.Law 90–351, as amended, and Title 18, U.S.C. Appendix § 1202(a), which deal with the possession of firearms by a previously convicted felon.

2. Defendant Drew was sentenced to four 7-year terms and one 5-year term, all to run concurrently. Defendant Gipson was sentenced to three 10-year terms and one 5-year term, also to run concurrently.

we find to be controlling in the case at bar.

In *Draper* the government's informant did not state the way in which he had obtained his information, but he did report that Draper had gone to Chicago the day before by train to obtain narcotics and that he would return to Denver by train on one of two specific mornings. Moreover, the informant described the physical appearance, the clothes, the walk and the bag Draper would be carrying. Police went to the station on the designated days and observed a person having the exact physical attributes and wearing the precise clothing described by the informant. All the information supplied by the informant was corroborated by the observations of the police. Draper was then searched, and the heroin, which eventually lead to his conviction, was found.

The Supreme Court, in finding that the information supplied by the informant was sufficient to show probable cause, declared that the government agent would have been derelict in his duties had he not pursued the tip. In language which answers the assertion of the instant appellants that the arresting authorities observed only innocent activity and did not actually know a crime had been committed, the Draper court declared that it would have been wrong not to act when the agent

> * * * had personally verified every facet of the information given him by Hereford [the informant] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh [the agent] had "reasonable grounds" to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true. Draper v. United States, supra, at 313, 79 S.Ct. at 333.

■ The *Draper* facts bear great similarity to the facts in the case at bar.

In each case the suspects were identified with sufficient detail to permit location and surveillance. Each informant had a tested period of reliability. Each suspect appeared or was located at the exact place, in the exact manner, and during the exact time designated. Put more simply, Agent Williams verified the details of a reliable informant's tip. This verification corroborated the presence of three Negroes, driving a black, 1969 Cadillac, with Missouri license plates, staying at the Sands Motel, departing at the time indicated, going to a city linked to the subjects' trafficking in drugs. Here, as in *Draper*, had the agents failed to act, they would have been derelict in their duties. Here, as in *Draper*, because of personal verifications by the officers of the numerous details, there was probable cause to believe that the remaining bit of information supplied by the informer—that these suspects planned to arrange for the delivery of narcotics in the vicinity—would likewise be true. As was stated in Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949),

> In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.

■ Just as the informant in *Draper* did not and physically could not have had personal knowledge that Draper had actually consummated an illegal transaction, the informant here did not have to supply the agent with personal knowledge that a purchase had taken place. The information that was supplied positively indicated that the defendants intended to violate the law in a specific and detailed manner. The case law of this circuit clearly permits the establishment of probable cause if the information is provided by a reliable informer in sufficient detail so as to permit adequate corroboration of its trustworthiness. In United States v. Martin, 425

F.2d 268 (5th Cir. 1970), the agent's prior experience with the informer and the informer's description of the travel plans, locale in which the subjects planned to purchase narcotics, the automobile, and the appellants was held sufficient to bring the case within *Draper.* *See also* United States v. Sanchez, 412 F.2d 1177 (5th Cir. 1969); and United States v. Acosta, 411 F.2d 627 (5th Cir. 1969).

We find that under the facts and circumstances in the present case, there was probable cause to believe that Drew and Gipson were committing or had committed a violation of the laws of the United States relating to trafficking in narcotics. The arrest was therefore lawful, and the subsequent search and seizure, having been made incident to a lawful arrest, were likewise valid. The district court did not err in denying Drew and Gipson's motion to suppress the evidence as a result of their arrest.

## III. LIMITATIONS ON CROSS-EXAMINATION.

Next, Drew and Gipson contend that the trial court denied them a constitutional right by refusing to permit them to cross-examine Agent Williams as to the source of his informant's information. The court sustained objections by the government based on the informer's privilege after an *in camera* hearing indicated that to reveal the source of the informant's information would lead to discovery of the identity of the informant. Drew and Gipson, however, contend that because such information is so critical to the establishment of informer reliability and credibility that the *in camera* determination that identity of the sources would lead to the identity of the informant is subordinate to the real issue of whether Drew and Gipson were entitled to discover the sources of the informant's information.

It is true that Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1963), requires a two-prong showing of objective fact to support the issuance of a warrant based upon hearsay information from an informer. These are: (1) the affiant must state the reason why he thinks the informant is reliable, and (2) the affiant must give the source of the informant's information as it was expressed to him.

It is also true that, although Agent Williams testified that the informant disclosed the sources of his information, he did not testify in open court as to these sources since the trial judge sustained the government's objection based upon the informer's privilege. The failure to divulge sources, however, does not automatically dictate the absence of probable cause. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), teaches that observations by the police can make a hearsay affidavit valid even if it does not meet the two criteria set out in *Aguilar,* supra, and *Draper* confirms that sufficient independently verifiable details can constructively sanction the adequacy of the source of an informer's tip. Thus, since the reliability of the informer's information was established by the corroborating surveillance of the agents, divulging the source of the informer's information would be immaterial.

We do not agree with Drew and Gipson's contention that it is unimportant whether the identity of the informer becomes known as a result of revealing the source of his information. While Astraea is blind to the status of parties who seek her aid, she is not insensitive to the vital part informers play in law enforcement. We cannot ignore the fact that it is more than problematical that to identify an informant is to render him useless. Nor may this court turn its back on the highly feasible potentiality that the identification of an informant may result in his death. Gonzales v. Beto, 425 F.2d 963, 971 (5th Cir. 1970). *See also,* United States v. Mendoza, 433 F.2d 891 (5th Cir. 1970); United States v. Newsome, 432 F.2d 51 (5th Cir. 1970).

Because probable cause was found in a way that obviated the need for testimony as to the sources of the

informant's information and because of the informant's precarious position in the scheme of things, we find that the district court did not err in sustaining the government's objections based upon the informer's privilege. Neither Drew nor Gipson were deprived of any constitutional right by being limited in their cross-examination to this extent.

## IV. THE ADMISSION OF THE MARIJUANA

Finally, Drew and Gipson contend that the admission of the 20 pounds of marijuana as evidence on the heroin charge under 21 U.S.C.A. § 174 (1961) was erroneous, the unlawful importation of marijuana being subject to another part of the Code—21 U.S.C.A. § 176a (1961). The defendants contend the denial of the motion to exclude this evidence constitutes error. We disagree.

At the time Drew and Gipson were tried, there was a serious question as to the continuing vitality of the Section 174 evidentiary rule, which allowed an inference of guilt from possession alone. Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), had held the same presumption invalid as applied to marijuana. Additional doubt existed because of Erwing v. United States, 323 F.2d 674 (9th Cir. 1963), wherein the Section 174 presumption had been declared invalid with respect to cocaine.

In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), decided January 20, 1970, the Supreme Court upheld the presumption as applied to heroin. However, at the time the instant case was tried the court did not have the benefit of the *Turner* decision. Since the government did not have direct evidence of illegal importation and since the statutory presumption was potentially based upon a sandy foundation, it was no more than careful trial procedure for the government to make the best case it could with regard to knowing illegal possession and intent. It was for this reason that the government was warranted in introducing and

the trial court in receiving into evidence the approximately 20 pounds of marijuana.

This circuit has held that proof of another crime which aids in or is appropriate in establishing the crime in question is admissible. Matthews v. United States, 407 F.2d 1371, 1381 (5th Cir. 1969). It was not error for the trial court to regard the presence of such a substantial quantity of marijuana in a vehicle also containing heroin as appropriate to show intent with respect to heroin. Both are drugs frequently involved in smuggling; and both are covered by almost identical statutes which are found within the same Code title. The statutory regulations are generally the same for both heroin and marijuana.

Thus, although in light of *Turner* it might now be unnecessary to admit evidence of concurrent possession of marijuana where unrefuted possession of heroin could be shown, such was not the situation when Drew and Gipson were tried and sentenced. While we leave open the issue of the use of such supplemental evidence in future similar cases, we find no error in the trial court's admission of the marijuana into evidence here.

The decision of the district court is hereby

Affirmed.