**Alfred L. "Sonny" TRUITT, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 46059.**

Court of Criminal Appeals of Texas.

Feb. 20, 1974.

Frank S. Wright, Dallas, for appellant.

Larry Miller, Dist. Atty., Greenville, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This is an appeal from a conviction of possession of a narcotic drug, to-wit: marihuana. Following a trial before the court, appellant was found guilty and punishment was assessed at four years' confinement.

Appellant contends in his sole ground of error that "the trial court committed reversible error by allowing the introduction of evidence seized pursuant to an illegal search and seizure of appellant's automobile."

Prior to trial, a hearing was held on appellant's motion to suppress evidence. Since the constitutional validity of a warrantless search can only be decided in terms of the concrete factual situation presented by each case, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 917 (1967); Brown v. State, Tex.Cr.App., 481 S.W.2d 106, a thorough recitation of the facts developed at the aforementioned hearing is necessary.

Richard Trice, an employee of the Greenville Police Department, testified that on or about August 27, 1970, he was assigned to the dispatch office of the Greenville Police Department. Acting in that capacity, he took incoming telephone calls to the Police Department. At approximately 8:20 P.M., he received a telephone call relating to Alfred L. "Sonny" Truitt, Jr. The caller did not identify himself but advised Officer Trice that appellant was enroute from Dallas to Greenville with approximately ten pounds of marihuana in his gold Firebird automobile. The anonymous informant also said that appellant had left about fifteen minutes before the call was placed.

Officer Trice dispatched Patrolman Lamb, Sergeant Jordan and Officer Carroll, who were present in the dispatch office, to intercept appellant at the intersection of Interstate 30 and Highway 24. Soon after reaching the point of anticipated interception, Officers Jordan and Lamb observed a gold Firebird slow and leave the expressway at the Greenville exit. Thereupon, the officers stopped the car.

Officer Jordan testified that he had a description of the appellant's automobile but not the license number. Officer Jordan further testified that he observed appellant get out of his car from the driver's side as he approached him. After asking another person in the front passenger seat to step out of the car, Officer Jordan said that Officer Lamb informed appellant that "we had information that he had in his possession a quantity of marihuana and they were going to search his vehicle for the same." While the officers searched the vehicle, Officer Jordan observed Officer Lamb take a light green sack from the front floorboard of the car, open it, and take out several plastic bags filled with a substance that appeared to be marihuana. Officer Jordan also testified that they were not searching for weapons.

Although Jordan said he could see the green sack inside the car, on direct examination Officer Lamb testified that he could not see the marihuana until he opened the sack. Additionally Lamb stated that appellant had not committed any traffic offense and that he stopped appellant solely because he had been dispatched to do so by Officer Trice. Lamb also stated that he searched the car without appellant's consent and without a search or arrest warrant. Further testimony reflected that at the time of the search appellant was in custody, and if appellant had attempted to remove the car, he would have been restrained. At the motion to suppress Officer Trice stated that he had never received any information from the informant before, and that at the time he received the information he had no way of knowing whether or not the informant was credible.

During the actual trial[1] further testimony established that appellant was taken immediately before a magistrate where a complaint was filed against him, and he was given the Miranda warning. Subsequently, he was taken to the Greenville Police Department. At the police station it was agreed by the officers that they had reason to search appellant's apartment for narcotics, and Officer Ewalt was asked to draw up a search warrant. However, Ewalt testified that while he was typing the search warrant appellant was brought into the office. At that time Ewalt asked appellant if he would sign a consent to search as "I was drawing up a search warrant, to save time and effort." Appellant executed the consent to search, but later refused to accompany the officers to his residence. Officer Lamb and two other officers then proceeded to appellant's apartment where they recovered marihuana seeds in a plastic bag hidden behind a picture in the dining area of the apartment.

The officers had neither an arrest warrant or a search warrant at the initial arrest. This Court thoroughly articulated the elements that must exist to justify a warrantless search in Brown v. State, Tex.Cr.App., 481 S.W.2d 106 at page 109:

"In order for a warrantless arrest or search to be justified, the state must show the existence of probable cause at the time the arrest or search was made and the existence of circumstances which made the procuring of a warrant impracticable. E. g. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1923); Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744. Where probable cause is lacking, the challenged search will not be upheld merely because the exigencies of the situation precluded the obtaining of a warrant. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 917 (1967); Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L. Ed.2d 538 (1968)."

The issue thus becomes whether probable cause for an arrest and search exists merely on the basis of an anonymous informer's tip alone.

■ The standards applicable to determining whether the facts of a case support an officer's probable cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied when reviewing the decision of a magistrate. Whitely v. Warden, Wyoming Penitentiary, 401 U.S. 450, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); Brown v. State, supra.

■ Officer Trice testified that he had never received any information from the informant before and had no way of know-

---

1. The record reflects that following the court's action in overruling appellant's motion to suppress appellant's counsel and the District Attorney agreed that the court consider the testimony elicited at the hearing for its determination of the case on its merits. However, the District Attorney did elicit further brief direct testimony from several witnesses before the State rested and closed its case. Appellant did not testify or call any defense witnesses, but relies solely on the testimony elicited from the State's witnesses to support his appeal.

ing whether or not the informant was credible. Likewise, the record reflects that in the brief conversation between the anonymous informant and Trice the informant did not relate any circumstances by which he came to know that appellant possessed contraband. It is clear that the informant's tips in the instant case fail to satisfy either of the two prongs of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).[2] Unless some of the underlying circumstances upon which the informant based his conclusions are before the reviewing court, the informant's tip, standing alone, is insufficient to constitute probable cause. Cole v. State, supra; Aguilar v. Texas, supra.

The State concedes that this is not a case involving a "credible, reliable and trustworthy informer," but contends that the warrantless arrest was necessitated because of the lack of time in which a search warrant could be obtained. Article 14.04, Vernon's Ann.C.C.P., provides:

"Where it is shown by satisfactory proof to a peace officer that, upon the representation of a *credible person* that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused." (emphasis added)

█ Thus, it can be seen that in order to justify an arrest without a warrant the State must establish that the information must be received from a credible person, that the accused is about to escape, and further that there was not sufficient time to secure a warrant. The first two requirements were clearly not satisfied.

The State also contends in essence that the case at bar falls within the ambit of

Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1957) and Almendarez v. State, Tex.Cr.App., 460 S.W.2d 921, because the informant provided specific information describing appellant's automobile and subsequent route. In that line of cases the police had some other basis for believing that the informant was truthful, and the specificity of his information served only to demonstrate that, in all likelihood, he had gained his information in a reliable manner. In the case at bar, the informant was completely anonymous and not shown to be credible. To allow the informant's brief conversation to constitute probable cause would be in effect allowing it to serve as the "underlying circumstance" for determining his veracity. This is not permissible because at the point of interception of appellant the credibility of the informant was not and could not be verified. Aguilar v. Texas, supra; Cf. Mendoza v. State, Tex.Cr.App., 492 S.W.2d 489. The State's reliance on Draper v. United States and Almendarez v. State, supra, is misplaced. See also Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744.

The District Attorney asked each officer, over strenuous objection by appellant's counsel, whether they had information in their possession that appellant was a known marihuana user and also whether appellant associated with known marihuana users. Each officer merely answered the aforementioned questions with the answer, "Yes, sir."

█ While it is clear that where an initial impetus for an arrest is an informer's tip information gathered by arresting officers prior to the point of interception can be used to sustain a finding of probable cause for an arrest that could not be adequately supported by the tip alone. However, the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip

2. As stated in Cole v. State, Tex.Cr.App., 484 S.W.2d 779, although both of those cases concerned search warrants, the standard for determining the sufficiency of the informant's

tip is the same for either search warrants or arrest warrants. See Whitely v. Warden, Wyoming State Penitentiary, supra.

that the arrestee committed the felony, or was in the process of committing the felony. Whitely v. Warden, supra; Spinelli v. United States, supra.

In the present case, the record is devoid of any testimony pertaining to a surveillance or any information gathered by the officers relating to appellant that would support either the reliability of the informant or the informant's conclusion. Cf. Spinelli v. United States, supra; Gonzales v. Beto, 425 F.2d 963; McCrea v. State, 499 S.W.2d 151 (1973).

■ Finally, the seizure of the contraband itself cannot be taken to be a corroborating element for probable cause. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Gaston v. State, Tex.Cr.App., 440 S.W.2d 297, 302, concurring opinion.

For the aforementioned reasons we conclude that the introduction of the evidence sought to be excluded in the motion to suppress was error because it was obtained pursuant to an illegal arrest and search. The question which then arises is whether the error was prejudicial, and of such nature as to compel a reversal of this case in light of appellant's consent to search his apartment.

■ The admission of illegally seized evidence may be harmless error, but before an error of constitutional dimension can be held to be harmless, the reviewing court must be able to declare that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284; Cole v. State, Tex.Cr.App., 484 S.W.2d 779. Applying this test, the record does not reflect that the evidence of the illegal search of the car and arrest of appellant was harmless.

Prior to the trial, the court ordered one of the two indictments charging appellant with possession of marihuana be quashed upon agreement by the appellant and the district attorney, following the authority of Sikes v. State, 169 Tex.Cr.R. 443,. 334 S. W.2d 440. Thereafter, appellant was tried upon the basis that the seizures made from his automobile and his apartment were one transaction, and evidence from both seizures was introduced in the trial of appellant.

The case at bar is unlike Cole v. State, supra, a robbery case in which the court committed harmless error in permitting the introduction of a shotgun and shells. Unequivocal eyewitness testimony established that defendant was one of the robbers, and this Court held that the introduction of the illegally seized weapon was harmless error. The eyewitness testimony, excluding the illegally seized evidence, established defendant's guilt beyond a reasonable doubt. In the case at bar, the arrest without probable cause and the fruits obtained from the subsequent search provide the evidence necessary to prove the State's case.

Although it is inconceivable that appellant would have given his consent to search prior to the finding of the marihuana following his illegal arrest, we need not decide whether the consent executed by appellant was valid.[3] There being no probable cause for the arrest of appellant or for the search of his automobile, the court's action in overruling appellant's motion to suppress evidence and admitting such evidence at trial constituted reversible error. See Wong Sun v. United States, supra; Brown v. State, Tex.Cr.App., 481 S.W.2d 106; Cf. Santiago v. State, Tex.Cr.App., 444 S.W.2d 758.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

---

3. For recent cases dealing with consent to search see Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); and Stephenson v. State, Tex.Cr.App., 494 S.W.2d 900.

MORRISON, Judge (concurring).

In view of my dissent in McClain v. State, 165 Tex.Cr.R. 545, 309 S.W.2d 456, I vote to reverse this conviction.

DOUGLAS, Judge (dissenting).

The appellant's sole complaint is that his arrest was illegal and all of the evidence obtained as a result of the search of his car and his home was, therefore, inadmissible.

A summary of the testimony is necessary to determine the question of the right of the officers to arrest the appellant.

Officer Richard Trice, a dispatcher of the Greenville Police Department, testified that he knew the appellant and knew him to be a marihuana user. He had information that appellant supplied marihuana to others. He also knew that appellant owned a gold 1970 Firebird automobile. At approximately 8:20 p. m., the night in question, he received a long distance call from someone who did not identify himself. The caller reported to Trice that appellant was on his way from Dallas to Greenville with approximately ten pounds of marihuana in his car. The caller stated, "He's in his gold Firebird and he left Dallas approximately fifteen minutes ago." Trice told the caller that he knew the car. He asked the caller to give his name, but he would not. Trice then reported this to Officers Jimmy Jordan and John Lamb. Both of these officers testified that they knew appellant as being a known user and a supplier of marihuana to others. The two officers further testified that after they received the information from Officer Trice they went to the intersection of Interstate Highway 30 and Wesley Street in Greenville. Within a very short time, at approximately 8:30 p. m., they saw the appellant driving his gold Pontiac Firebird. They stopped the appellant. Officer Jordan testified that as he approached he observed a sack in the automobile.

Officer David Ewalt testified that at 9:29 p. m. the same evening the appellant, after being warned by a magistrate, executed a written consent to search his apartment in Greenville. This consent was introduced into evidence. The appellant first asked to go to his apartment for the search but later stated that he did not want to go.

The officers found marihuana and marihuana seeds in the apartment. The closest case in point by the United States Supreme Court is Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

There the arrest was made without a warrant. Information was given by an informer that Draper was dealing in narcotics; that he would arrive on a certain train with narcotics. His description was given with particularity.

In the present case the informer stated that appellant would be arriving in Greenville with a large amount of marihuana in his gold Firebird. The officers knew the appellant and to them he was known as a user and distributor of marihuana. The officers also knew that he drove a gold Firebird automobile. He arrived in the gold automobile at the approximate time the informant said that he would.

In the Draper case, the officers did not know him and did not know except from a reliable informer that he was a dealer in narcotics. In the present case, the officers knew more about the appellant than the officers knew about Draper. There is no direct testimony in the present case that the informant was reliable.

Rangel v. State, Tex.Cr.App., 444 S.W. 2d 924, is somewhat analogous to the present case. There the informer told the officers that the defendant was at a certain location selling heroin and was about to sell out. When the officers arrived, they found the defendant was where the informer said she would be. The officers knew that she was a narcotics addict. The officers testified that their informer was

reliable. This Court held there was probable cause for the warrantless arrest. See Harris v. State, Tex.Cr.App., 486 S.W.2d 88, where this Court held that it was not incumbent upon an officer to obtain a warrent before proceeding further upon an informer's tip which had ripened into probable cause. Here, as in Harris, the informant's information was not corroborated until the time of the arrest.

In United States v. Acosta, 411 F.2d 627 (5th Cir. 1969), the court held that neither Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, nor its interpretation as construed in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, detracted from the vitality of Draper, and the court held in a similar fact situation that probable cause was shown.

The Fourth Amendment to the Constitution of the United States provides, in part, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, . . . . ."

The present case is somewhat like Gomez v. State, Tex.Cr.App., 470 S.W.2d 871, where no warrant had been issued. An informer that the officers knew to be reliable informed Officer Gann that Torres and Gomez were preparing heroin for distribution at an address on Holly Street and described the automobile to be used with particularity. The officers knew the blue and white 1960 Pontiac. This Court wrote, "There would appear to be some indication that the informer spoke with personal knowledge or had gained his information in a reliable way. Almendarez v. State, Tex.Cr.App., 460 S.W.2d 921."

As in the Gomez case, at the point of interception in the present case, every fact related by the informant except the presence of the narcotics was verified and "there was therefore underlying circumstances as to the officer's conclusion that the informer was credible and his information reliable."

Also in Gomez, the Court emphasized that, "The relevant test, in the case like that at bar, is whether the search was unreasonable under all of the circumstances, for it is only unreasonable searches that are prohibited by the Fourth Amendment."

In United States v. Drew, 436 F.2d 529 (5th Cir. 1971), sufficient details were furnished to enable the officers to verify much of the information related by the informer. That court wrote: "The information supplied was sufficient in detail to allow adequate corroboration of its trustworthiness and enabled the officers to conclude that the informer spoke with personal knowledge or had gained the information in a reliable way."

The search in the present case was not unreasonable under the Fourth Amendment. The officers had sufficient information for reasonable people to conclude that the appellant was in his gold Firebird and in the possession of marihuana and that they did not have time to procure a warrant. Even without testimony that the informant was reliable, the facts are stronger for a reasonable search in the present case than in Draper, supra, where the officers knew nothing of Draper's background. In the present case, the officers knew the appellant and his dealings with marihuana.

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). As Chief Justice Burger has said, "We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter—is not a 'practical consideration of everyday life' upon which an officer (or magistrate) may properly rely in assessing the reliability of an infor-

mant's tip." United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, where the Supreme Court discussed the question of consent to search and the concurring opinion discussed the exclusionary rule as applied to Fourth Amendment rights. Here, the appellant was warned before a magistrate that he did not have to consent to the search. In Schneckloth v. Bustamonte, supra, the Supreme Court held that such a warning was not required and that consent to search requirements would not be viewed as strictly as the requirements for voluntary confessions. This Court has held that an illegal arrest in itself does not prevent the officers from obtaining a voluntary confession. Does the present holding now rule but the possibility of a voluntary consent to search and a voluntary confession automatically if the arrest has been illegal?

The Supreme Court in the Schneckloth case wrote:

"In short, there is nothing in the purposes or application of the waiver requirements in Johnson v. Zerbst that justifies, much less compels, the easy equation of a knowing waiver with a consent to search. To make such an equation is to generalize from the broad rhetoric of some of our decisions, and to ignore the substance of the differing constitutional guarantees. We decline to follow what one judicial scholar has termed 'the domino method of constitutional adjudication . . . wherein every explanatory statement in a previous opinion is made the basis for the extension to a wholly different situation." The footnotes cite Friendly, The Bill of Rights as a Code

of Criminal Procedure, 53 Calif.L.Rev. 929 at 950.

The "domino method" should not be applied in the present case because of some of the explanatory language in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723 (1964), and the language in Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637, both referred to as "explicating" and "obfuscating" by the members of that Court. The question in the present case has not been before that Court. The arrest and the subsequent search of the automobile in the present case was not unreasonable. See the concurring opinion in Gaston v. State, Tex. Cr.App., 440 S.W.2d 297.

The Supreme Court also noted in Footnote 36 that the case did not require a determination of what effect custodial conditions might have on a search authorized solely by an alleged consent. We should not apply the "domino method" to the search of his premises.

We are extending the exclusionary rule, to permit a defendant to go free because the majority holds that the officers blundered, far beyond any decision of the Supreme Court of the United States.

I would not reverse the conviction in this case. However, I would grant the appellant's motion to abate the appeal for resentencing under Article 6.01(c), Controlled Substances Act, which became effective on August 27, 1973, after this case was tried. See the dissenting opinion in Ex parte Giles, 502 S.W.2d 774 (1973).

For the above reasons, I dissent to the reversal and the refusal to abate the appeal.

ROBERTS, J., agrees with this dissent only insofar as it applies to question of search.