**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Wayne FREUND,
Defendant-Appellant.**

No. 75–1100.

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1976.

874

David R. Rosado (Court-appointed), El Paso, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., Frank B. Walker, William B. Hardie, Jr., Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

CLARK, Circuit Judge:

In this direct criminal appeal from conviction of possession of marijuana with intent to distribute (21 U.S.C. § 841(a)(1)), appellant Freund raises two issues which relate to the validity of a warrantless search of his truck conducted by a Customs Control officer. Specifically, appellant contends that: (1) the officer lacked probable cause to search the vehicle and (2) the trial court erred in denying his request for disclosure of the identity of a government informer who witnessed the search and ensuing arrest. Without the aid of supplementary proceedings in the district court, this court is unable to clearly assess the propriety of the trial judge's refusal to order disclosure and its effect on the issue of probable cause. We thus remand the case with directions that the district court interview the informer-witness *in camera* for the purpose of determining whether disclosure is warranted under the balancing test prescribed by the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

## I. THE FACTS

Appellant's sole defense at his non-jury trial was that the evidence which formed the basis of his conviction was secured as a result of an illegal search and seizure and thus should have been suppressed. To resolve appellant's claim of an illegal search, a detailed recitation of the events preceding the search is required. Customs Control Officer Regala testified that on May 17, 1974, he received a tip from a reliable informer that an individual in El Paso was attempting to purchase a large quantity of marijuana from Mexico. Although no name or description of the person was given, the tipster stated that the individual was driving a red utility truck bearing North Carolina license plates, No. AE 8420. The next evening at approximately 10:00 p.m. Regala was foot-patrolling the Rio Grande a mile away from the port of entry at Fabens, Texas, when he observed two vehicles approach each other from opposite sides of the border, stop and turn their lights off. The vehicle from the American side then left the area and drove within 20 yards of Regala, just long enough for the officer to note that it was a red utility truck with North or South Carolina plates containing the letters "A" and "E." Regala did not witness any illegal transaction nor did he take steps to secure a search warrant for the truck. On the morning of the arrest, May 20, 1974, Regala was patrolling Interstate Highway 10 when he saw the truck described to him by the informant. Believing the vehicle to be

the same one involved in the nocturnal events at the border two days before, Regala allowed the vehicle to pass him and proceeded to run a license check. At this point, Regala claimed that he observed that "the back of the vehicle didn't appear to be quite right, in that the bed of the vehicle appeared to be somewhat higher than I was expecting." He also noticed that a seam of white caulking had been laid at the edges of the bottom of the truck's bed and thought that this suggested a false bottom. According to Regala, he now felt justified in stopping the truck "due to my prior information, the activity I had observed and the vehicle itself. . ." Regala then stopped the vehicle and asked the driver, appellant Freund, for identification. Freund had none. While conversing with appellant regarding his inability to produce identification, Regala detected the distinct odor of marijuana. The search that followed uncovered 164 pounds of marijuana hidden underneath a false bottom in the front part of the truck bed. Freund was subsequently arrested and advised of his constitutional rights.

In his pretrial motion to suppress and at trial, Freund took the position that Regala's sole purpose for stopping the truck was to conduct a "routine check" and that the officer did not have probable cause to believe that the vehicle contained contraband. To support his theory, Freund relied on a portion of a written case summary prepared by Officer Legaretta, a DEA special agent who compiled the report from information supplied by Regala. The summary did not recount the scene at the border and described the reason for the search as a "routine check." During cross-examination of Regala concerning the facts surrounding Freund's arrest, defense coun-

sel learned that an informant who had not supplied any information in this case was present at the search and arrest. Defense counsel then asked the trial court to direct the United States Attorney to produce the informant for questioning as a material witness. The court denied the motion, agreeing with the government's contention that disclosure was required only when the informant participated in the commission of the offense.

## II. PROBABLE CAUSE

■ The law is clear that a moving vehicle is subject to a warrantless search if probable cause and exigent circumstances exist. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Freund contends that this case is governed by *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), which prohibits less than probable cause searches by roving border patrols. The government contends that *Almeida-Sanchez* is inapplicable because there is no evidence indicating that Officer Regala intended to rely on the authority given Immigration and Naturalization Service Agents.[1] In either case, probable cause is the applicable standard for determining the validity of the search.

■ Our initial inquiry in determining the existence *vel non* of probable cause involves an assessment of the informant's tip in the light of the *Aguilar-Spinelli* test.[2] Standing alone, the tip was insufficient to establish probable cause. Although there is ample evidence in the record of the past reliability of the informant,[3] the tipster gave no indi-

---

1. The government does not contend that Officer Regala had authority as a customs agent to conduct an "extended border search" of Freund's vehicle on less than probable cause. By our decision today we intimate no view concerning the effect of *Almeida-Sanchez* on the standard to be applied to customs searches in areas beyond the border or its functional equivalent.

2. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

3. Officer Regala testified that the informant had given him reliable information in four cases leading to the arrest of nine persons.

cation of how he came by his information nor did he furnish a description of the criminal activities in such "sufficient detail that the magistrate may know [the informant] is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). *See also United States v. Drew*, 436 F.2d 529 (5th Cir. 1970), *cert. denied*, 402 U.S. 977, 91 S.Ct. 1982, 29 L.Ed.2d 143 (1971).

Because the informant's report was not sufficient, we must determine if the independent investigation and observations of Officer Regala sufficiently corroborated the tip to establish probable cause. *See United States v. Anderson*, 500 F.2d 1311, 1316 (5th Cir. 1974); *United States v. Squella-Avendano*, 447 F.2d 575, 580 (5th Cir.), *cert. denied*, 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971). The government contends that the border incident, coupled with the suspicious appearance of the truck, were enough to confirm the tip and render Regala's decision to stop valid. Appellant disputes the significance of the view at the border and argues that he ought not be required to accept Regala's description of the scene at the arrest, as well as his motive for the stop and search, without being allowed to develop the testimony of the only other person present, *i. e.*, the informant-witness.

Regala's observations and actions on the morning of arrest could be essential to a determination that he possessed probable cause for the search. Without deciding the question, we note that absent the corroborating view of the suspicious appearance of the truck, the issue of probable cause would be very close. *Cf. United States v. Anderson*, 500 F.2d 1311 (5th Cir. 1974); *United States v. Rodgers*, 442 F.2d 902 (5th Cir. 1971); *United States v. Drew*, 436 F.2d 529 (5th Cir. 1970). Thus, the trial court's refusal to order disclosure of the identity of the person who was in a position to see and hear the events of March 20 is inextricably intertwined with our review of its finding of probable cause.

## III. INFORMER'S PRIVILEGE

■ The appropriate starting point for any discussion of the scope of the so-called informer's privilege is *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In that case, the Court ordered disclosure of the identity of an informant who was an active participant in an illegal drug transaction. The test outlined in *Roviaro* remains the guide for our decision today:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. *Id.* at 62, 77 S.Ct. at 628–29.

In several subsequent cases, this court has applied the balancing test of *Roviaro* to determine whether disclosure of the identity of an informer-participant was necessary to a fair determination of the issue of an accused's guilt or innocence. *See, e. g., United States v. Davis*, 487 F.2d 1249 (5th Cir. 1973); *Gilmore v. United States*, 256 F.2d 565 (5th Cir. 1958). The inquiry centers on the likelihood that the informant possesses facts which are relevant and helpful to the accused in preparing his defense on the merits. To comply with *Roviaro*, a case-by-case balancing of the conflicting interests is required.

■ When the informant plays no part in the prohibited transaction but merely supplies information which leads to probable cause for an arrest or search, the proper balance is more easily struck. We have held that where the evidence shows that an informer is a mere tipster, no disclosure of his identity is required.

*United States v. Clark*, 482 F.2d 103 (5th Cir. 1973); *United States v. Acosta*, 411 F.2d 627 (5th Cir. 1969); *Miller v. United States*, 273 F.2d 279 (5th Cir. 1959), *cert. denied*, 362 U.S. 928, 80 S.Ct. 756, 4 L.Ed.2d 747 (1960). This accommodation is consistent with the United States Supreme Court's decision in *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) which upheld the constitutionality of Illinois' informer's privilege as applied to preliminary hearings to determine probable cause. *McCray's* discussion of the rule in federal criminal cases indicates that disclosure would be a rarity in the ordinary tipster case:

> In sum, the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, *let alone* a preliminary hearing to determine probable cause . . . . (Emphasis added.) *Id.* at 312, 87 S.Ct. at 1063.

Nevertheless, *McCray* does not operate as a bar to ordering disclosure in all probable cause cases. *See United States v. Anderson*, 509 F.2d 724, 729 (9th Cir.), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). In a proper case, the trial court may wish to examine the informant to assess his credibility or accuracy. *Id.*

The case at bar is unique in that although disclosure would only be relevant to a finding of probable cause, this is certainly not the ordinary tipster situation. The informant whose identity is sought to be disclosed provided no information which led to Freund's arrest, nor did he participate in the offense charged. He may most properly be characterized as an observer or material witness who could shed light on the events immediately preceding the search of appellant's vehicle. The government, however, still has an interest in protecting its agent's anonymity. Like the ordinary tipster, if this informant's identity is publicized, his usefulness to the government in future narcotics cases may be at an end and he could be exposed to harm from persons seeking revenge for past actions.

■ To properly balance the interests in this case, it is necessary to know the substance of the information possessed by the informant-witness. If his recital of events is substantially similar to Regala's, disclosure would not be necessary. On the other hand, if his testimony would lend credence to Freund's theory that the stop was merely routine, appellant's request for disclosure should be granted.

An *in camera* hearing is the appropriate procedural vehicle for accomplishing the accommodation of conflicting interests in this case. A limited disclosure of identity and information to the trial judge recognizes the government's interest in maintaining anonymity while at the same time insuring the appellant's interest in developing the testimony of every witness who possesses facts which could control his claim of an illegal search and seizure. In *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the United States Supreme Court indicated that the *in camera* procedure was an acceptable device to aid the trial court in its application of the *Roviaro* test.[4] Similarly, this court found no error in a trial court's decision to conduct an *in camera* interview with informants who provided some of the probable cause for wire tap orders and search warrants in the case of *United States v. Howell*, 514 F.2d 710, 715 (5th Cir. 1975). Other circuits have approved the procedure in cases involving informants who possessed information relevant to the accused's guilt or innocence,[5] as well as instances where the

---

4. "In both the volume of the material to be examined and the complexity and difficulty of the judgments involved, cases involving electronic surveillance will probably differ markedly from those situations in the criminal law where *in camera* procedures have been found acceptable to some extent . . . *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (disclosure of informant's identity). . . ." 392 U.S. at 182 n. 14, 89 S.Ct. at 971 n. 14.

5. *United States v. Rawlinson*, 487 F.2d 5 (9th Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct.

informant's testimony pertained solely to the existence of probable cause.[6] Certainly there will be cases in which an *in camera* hearing is either unnecessary or insufficient to protect the defendant's rights. In the case at bar, however, the procedure is appropriate and required.

The cause is remanded to the district court with directions to conduct an *in camera* interview with the informant and to supplement the record of this case with an order which applies the balancing test of *Roviaro*.[7]

Remanded with directions.

1579, 39 L.Ed.2d 881 (1974); *United States v. Lloyd*, 400 F.2d 414 (6th Cir. 1968); *U. S. v. Jackson*, 384 F.2d 825 (3rd Cir. 1967), *cert. denied*, 392 U.S. 932, 88 S.Ct. 2292, 20 L.Ed.2d 1390 (1968). *See also McLawhorn v. North Carolina*, 484 F.2d 1 (4th Cir. 1973) (dicta).

**6.** *United States v. Anderson*, 509 F.2d 724 (9th Cir. 1975); *United States v. Hurse*, 453 F.2d 128 (8th Cir. 1971), *cert. denied*, 414 U.S. 908, 94 S.Ct. 245, 38 L.Ed.2d 146 (1973). *See also* Proposed Fed.R.Evid. 510(c) which adopted the *in camera* procedure in both the "guilt or innocence" and the probable cause situations.

Although this rule was not subsequently adopted, there is no indication that Congress, in rejecting the entire privilege article of the proposed rules, intended to express disapproval of any specific rule.

**7.** See for example *United States v. Doe*, 525 F.2d 878 (5th Cir. 1976).