Ex parte Frank W. LOZANO.

No. 52717.

Court of Criminal Appeals of Texas.

Oct. 20, 1976.

David R. Bires and Thomas M. Whitworth, Houston, for appellant.

Carol S. Vance, Dist. Atty. and Clyde F. DeWitt, III, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GUPTON, Judge.

This is a post conviction habeas corpus proceeding under Art. 11.07, V.A.C.C.P. Petitioner alleges he was the subject of an illegal wiretap conducted by the Houston Police Department. He further contends that information obtained as the result of the wiretap led to his arrest and was a constitutionally impermissible seizure.

Initially, the trial court held an evidentiary hearing at which Anthony Zavala, a former Houston Police Officer, testified for petitioner that a wiretap had been placed on petitioner's phone and had "paid off". The State's rebuttal witness, Officer E. D. O'Bryant, testified that he and his now deceased partner obtained the information leading to petitioner's arrest from an informant. He denied any knowledge of a wiretap on petitioner's phone during the time period in issue. It was stipulated that the district attorney who tried the case would testify he had no knowledge of any wiretapping. There was neither stipulation nor testimony concerning possible federal authorization for an electronic surveillance. Accordingly, this application for writ of habeas corpus was returned to the trial court for an additional hearing to determine if a proper electronic surveillance was authorized by any state or federal agency.

The trial court held a second evidentiary hearing in which it was stipulated that the United States Attorney's Office did not obtain or participate in obtaining a legal wiretap. The trial judge then found as a matter of fact "that there was no authorization to conduct an electronic surveillance by any agency, either state or federal . . ."

■ We will now consider the merits of petitioner's claim. Petitioner took the stand at the initial habeas corpus proceeding and indicated he had possession of the heroin. (Petitioner was convicted for possession of heroin.) The State contends that this subsequent admission precludes complaint about the legality of the search, relying on *Stein v. State,* Tex.Cr.App., 514 S.W.2d 927. We do not agree. The defendant in *Stein* admitted on the stand that the police found marihuana in his van, making it unnecessary for this Court to consider the defendant's contention that the seized marihuana was a product of an illegal search. *Stein* was a direct appeal from the trial on the merits, thereby distinguishing it from the instant collateral attack. It is not the purpose of a habeas corpus proceeding to determine guilt or innocence; therefore, although petitioner's statement would be a judicial admission for any later proceeding, it does not serve to waive error in the event petitioner's arrest is found to be the result of an improper search.

■ This Court is not bound by the findings of the trial court in a habeas corpus proceeding. *Ex parte Bagley,* Tex.Cr.App., 509 S.W.2d 332; *Ex parte Lemay,* Tex.Cr. App., 525 S.W.2d 1. Therefore it is necessary to review the record to determine if there is any evidence to support the trial judge's recommendation. *Ex parte Young,* Tex.Cr.App., 479 S.W.2d 45. There was conflicting testimony from the two key witnesses at the evidentiary hearing:

Former Houston Police Officer Zavala testified that a surveillance unit was maintained in an apartment a few blocks from petitioner's home. He stated that he saw a receiver and recorder in the apartment, although he did not see the electronic transmitter [which is typically installed at some point along the telephone line], nor did he personally install the device. Zavala further stated that the surveillance unit was in operation ". . . at least three days, because I was there two or three times." Zavala testified that he personally heard information that was received from the electronic device. He was informed by fellow officers in the apartment "that is Frank's [petitioner's] voice." Although he was unable to recall the precise conversation he overheard, Zavala testified, ". . .

I don't remember the exact words, but in a general way that Lozano was waiting for a shipment and he had no stuff there." After petitioner's arrest, Zavala testified that he had conversations with Officer O'Bryant concerning the results of the surveillance:

"Well, I can't recall any specific words, this is after the arrest, things to the effect that 'it paid off', 'we waited it out', 'it finally went down', 'we finally got him.'

\* \* \* \* · \* \*

. . . all indications to me were that yes, it came off the wiretap."

Zavala stated that these conversations indicated to him that the arresting officers obtained their information from the wiretap, even though ". . . we never used the term 'I got the information from a wiretap.'" He further testified that he and the arresting officers had never discussed whether there was an informant in petitioner's case.

Officer E. D. O'Bryant's testimony directly contradicts testimony given by Zavala. O'Bryant and his now deceased partner [Huerta] were the arresting officers. At the evidentiary hearing, he denied any knowledge of wiretapping:

"Q [PETITIONER'S COUNSEL] All right sir, now, with respect to the time from February 18, 1971, and the period of two (2) or three (3) days in advance of that particular date, is it not a fact that you did maintain a surveillance which contained in it receiving equipment which would receive transmissions from the telephone of Frank Lozano?
A No sir, it is not.
Q Is it your testimony that you did not employ wiretapping in this case?
A Yes, sir, it sure is.

\* \* \* \* \* \*

Q Have you ever seen a receiver that is used in receiving transmissions that are the result of electronic surveillance?
A I don't know."

In addition to denying any knowledge of a wiretap, O'Bryant testified that an informant was the source of the information leading to petitioner's arrest. At the evidentiary hearing O'Bryant stated that the informant "was Officer Huerta's original informant . . . but I had talked to him some time when Officer Huerta wasn't in pocket or something."

Petitioner attempts to impeach O'Bryant's testimony in his brief by saying that this testimony concerning which officer originated the informant contradicts his earlier testimony and that given by Officer Huerta at the trial on the merits. Petitioner asserts that during cross examination at the pretrial motion to suppress hearing Officer Huerta testified:

"Q Had you ever used this informer before?
A No sir, this was Officer O'Bryant's informer."

Officer O'Bryant gave similar testimony at the same pretrial hearing:

"Q Officer, had you ever received information from this particular informant before?
A Yes sir.
Q On few or many occasions?
A Quite a few times."

■■■ Unfortunately, the transcription of that previous hearing was not introduced into evidence and is not in the record before this Court. Since the record was not introduced, these arguments made in petitioner's brief cannot be considered for impeachment. In the instant evidentiary hearing, the trial court had before it the conflicting testimony of Zavala and O'Bryant. The court resolved this conflict against petitioner. There was evidence upon which the trial court could base its finding of no wiretap. Petitioner's first two grounds of error are overruled.

■■■ There was no corroboration of O'Bryant's assertion that his information was not the result of a wiretap but that it came through an informant. For this reason, petitioner argues that considerations of fundamental fairness require that the informant's identity be disclosed. We do not agree.

■ The test for disclosure of an informant's identity ordinarily involves a determination of whether:

"[T]he informer participated in the offense, was present at the time, or was otherwise shown to be a material witness to the transaction or as to whether appellant knowingly committed the act charged." *Barber v. State*, Tex.Cr.App., 511 S.W.2d 937.

Unless one of these factors is shown, the informer's identity need not be disclosed. *Enriquez v. State*, Tex.Cr.App., 501 S.W.2d 117; *Bueno v. State*, Tex.Cr.App., 501 S.W.2d 339. None of these factors were present in the instant case:

"Q [PETITIONER'S ATTORNEY] . . . What is the name of that informant?

[DISTRICT ATTORNEY]: I will object to that, your Honor. ·

THE COURT: Was he present at the time of the arrest?

A [OFFICER O'BRYANT] No sir.

THE COURT: Sustained.

[PETITIONER'S ATTORNEY]: Your Honor, at this time we would move for disclosure of the informant's identity on the basis that although he was not present at the scene of the arrest, the crust [sic] of this hearing is whether or not the information that lead to the arrest of Frank Lozano was derived from an informant or whether it was actually the result of information secured by illegal electronic surveillance.

THE COURT: That is overruled.

\* \* \* \* \* \*

[PETITIONER'S ATTORNEY]: There has been testimony to the effect that in fact there was a wiretap used with regard to securing this information upon which Mr. Lozano was arrested and we would state that this being an ultimate issue in this hearing that we would be entitled to have the identity of this informant under the circumstances.

[DISTRICT ATTORNEY]: We will ask that that be overruled.

THE COURT: Let me ask you, the last portion of the record with which you refreshed the witness' memory, does that indicate that he was present and saw it or anything of that nature?

[PETITIONER'S ATTORNEY]: No, it does not.

THE COURT: All right, it is overruled."

O'Bryant testified that he did not know at the time of the evidentiary hearing or at the time of the trial on the merits whether or not his informant's information was based on personal knowledge.

*Roviaro v. U. S.*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), discussed the scope of the informer's privilege and emphasized the need for balancing opposing interests. Appellant relies on *United States v. Freund*, 5 Cir., 525 F.2d 873, in which the court ordered an in camera hearing to accommodate the conflicting interests found in cases of informer privilege. Although not binding on this Court, *Freund* is distinguishable from the instant fact situation. *Freund* concerned the issue of probable cause for a stop and search. There the Fifth Circuit noted that it did not involve the ordinary tipster situation and characterized the informant as "an observer or material witness who could shed light on the events immediately preceding . . ." There is nothing in the record before us to indicate that the instant case involved an informer-witness situation. In fact, O'Bryant testified at both the evidentiary hearing and the trial on the merits that he did not know the source of his informant's information.

Petitioner's interests have been adequately protected and we decline to order the disclosure of the informant's identity.

The application for writ of habeas corpus is hereby denied.