**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Melchor DE LOS SANTOS,
Defendant-Appellant.**

**Nos. 86–2085, 86–2296.**

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1987.

Michael E. Tigar, Austin, Tex., for defendant-appellant.

Wayne F. Speck, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., Michael R. Hardy, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, DAVIS and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Melchor De Los Santos was arrested on October 29, 1985, for possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Following the district court's denial of both a motion to suppress the seized heroin and a motion to reveal the identity of a confidential informant, De Los Santos entered a conditional plea of guilty pursuant to Fed.R.Crim.P. 11(a)(2). In accordance with this conditional plea, De Los Santos now appeals the denial of his suppression and disclosure motions. Finding that the district court committed no error, we affirm.

## I.

On October 28, 1985, in the late afternoon Drug Enforcement Administration (DEA) Special Agent Albert Castro received information from a confidential informant that De Los Santos would be in the area of Malone and South Flores Streets in San Antonio, Texas, the following morning to pick up heroin that was to be stored somewhere in that area that evening. Apparently, at some point on October 28 Castro had also undertaken surveillance of De Los Santos, who was driving what was testified to as a red automobile, and followed him to a number of areas in San Antonio, including that of Malone and

South Flores Streets.[1] It is not clear from the record, however, whether Castro was following De Los Santos prior to receiving the information from the informant or after and in response to receiving it.

On the evening of October 28 Castro made arrangements to have a surveillance team assembled the next morning in the Malone-South Flores area. The next morning the agents observed De Los Santos drive in the same vehicle to the rear of a residence located at 302 West Malone Street, where he remained for two to four minutes. When De Los Santos left, several police officers and DEA agents followed him while Castro and several other DEA agents, with the consent of the occupants, searched the residence on Malone Street. However, no drugs were found. Castro subsequently gave the order to San Antonio Police Department detective Jerry Rangel to stop De Los Santos.

Once De Los Santos was pulled over, Rangel told him to place his hands on the steering wheel and then removed him from the automobile and frisked him. After moving De Los Santos to the rear of the automobile, Rangel went to the driver's side where he saw a brown paper sack protruding from underneath the front seat. Rangel removed the sack and, upon examining its contents, determined that it contained 15 packets of a substance that resembled heroin. De Los Santos was arrested; subsequently the substance in the packets was positively tested as heroin.[2]

After an indictment was returned charging De Los Santos with intent to distribute heroin in violation of 21 U.S.C. § 841(a), De Los Santos made a motion to suppress the evidence obtained from the search of his automobile and a motion requesting disclosure of the identity of the informant on whose tip the authorities based their stop and search. In the event that the government were to claim the privilege of nondisclosure as to the informant, De Los Santos also requested an *in camera* hearing in his memorandum in support of the motion for disclosure. At a minimum, he argued that his counsel should be present at the *in camera* hearing to determine whether the informant's identity should be revealed.

At a hearing on both motions before the district court, both Castro and Rangel testified as to the facts leading up to the arrest of De Los Santos. Castro also testified as to the reliability of the informant and as to the criminal record of De Los Santos. Regarding the informant, he stated that he had known the informer for ten or eleven years; that the informer had provided reliable information in the past that had led to the seizure of drugs; and that the informer was continuing to work on cases for the DEA.[3] With respect to De Los Santos' criminal record, there was evidence that he had been convicted for committing violent crimes and for the distribution of heroin.

Following Rangel's and De Los Santos' testimony and an argument by De Los Santos that he should be able to discover the identity of the informant, the government requested that the court hear additional information regarding the informant *in camera*. Counsel for De Los Santos did not request at this time that he be allowed to attend the *in camera* proceeding. The court granted the government's request. At the *in camera* hearing the judge, Castro, and the prosecutor were the only ones present. At this hearing the court was offered additional facts surrounding the informant's tip. This information could not be testified to in open court because it clearly would have revealed the identity of the informant. The court did consider whether the identity of the informant would be helpful to De Los Santos' defense, and whether it should therefore be released.

---

1. Castro testified that prior to the informant's tip De Los Santos had been suspected of being involved in the distribution of heroin. This information came from several sources, including the San Antonio Police Department.

2. These 15 packets were found to contain approximately 15 ounces of heroin.

3. De Los Santos' attorney did not cross-examine Castro on the issue of the informant's reliability and trustworthiness.

After sealing the *in camera* testimony, the court made findings of fact and conclusions of law. In addition to the facts stated above, the court found that the information supplied by the informant was reliable and had been provided by one whose reliability and veracity was established. The court also found that the totality of the circumstances gave rise to a reasonable suspicion to support the stop of De Los Santos' automobile. The court based its finding of reasonable suspicion on the knowledge of Castro, which had been transmitted to the arresting officers. Subsequent to the stop, the court found that Rangel made a proper arrest. Regarding the informant, the court found that there were compelling reasons for keeping the informant's identity confidential; that the informant was a knowledgeable person aware of each of the circumstances that were communicated to Castro; that there was no other disclosure of the informant's identity; that neither the informant's identity nor the informant's testimony would be helpful to De Los Santos' defense; and that there had been no showing by De Los Santos that the information of the informant could be material or helpful to his case.

The court subsequently supplemented its findings of fact and conclusions of law. The additional findings of fact and conclusions of law clarified its position regarding probable cause: [4]

> The Court finds that upon searching Defendant's vehicle pursuant to the stop occasioned by probable cause to believe that the Defendant possessed controlled substances, the arresting officers discovered a paper sack that was of a size and shape that indicated that it might contain the contraband sought. The Court concludes that the arresting officers had probable cause to believe pursuant to the standards set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), that the paper sack might contain the contraband sought, and therefore, the police were justified in searching the container and discovering the contraband therein.

Thereafter De Los Santos was rearraigned and he entered a conditional guilty plea under Fed.R.Crim.P. 11(a)(2). He was assessed a 17 year sentence of imprisonment. He now appeals the denial of his two motions. Basically, he argues that the district court erred in excluding him from the *in camera* proceeding, that the government did not have probable cause to arrest him, and that even with probable cause the search was unconstitutional. We address each of these contentions in turn.

## II.

De Los Santos' first argument attacks the propriety of the *in camera* proceeding. He asserts that excluding him from the *in camera* hearing violated his sixth amendment right to be present and "to be confronted with the witnesses against him." De Los Santos also argues that his sixth amendment right to a public trial was violated by his exclusion. This right to a public trial, he contends, serves the same purpose as his right to be present at the trial to confront his accusers. Thus, De Los Santos uses the analysis of the right to a public trial, expressed in cases such as *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), to support his contention that both the sixth amendment right to a public trial and his right to be present and confront his accuser were violated.

The government responds that at a hearing on a motion to suppress evidence a defendant does not have the right to hear details of the information given by a confidential informant to the arresting officers when those details would disclose the identity of the informant. The government argues that the informant's privilege articulated in *Roviaro v. United States,* 353 U.S.

---

**4.** Regarding the finding of probable cause, the district court stated in its order that "[f]ollowing the dictates of *Illinois v. Gates, supra,* the Court considered *all* the information presented to it, including the *in camera* portions, in arriving at its determination that there was sufficient probable cause to arrest Defendant/Appellant." (emphasis in original).

53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), allows the government to withhold the identity of the informant and any information that would lead to the informant's identity.

The fundamental issue, therefore, is whether it is necessary to compel disclosure of the informant's identity to De Los Santos or to require that he be allowed to be present at the *in camera* hearing to vindicate his sixth amendment rights of confrontation and of a public trial or whether we should deny disclosure because of an overriding interest of confidentiality compelled by the governmental privilege. To resolve this issue, we must examine the extent of the privilege of nondisclosure and the nature of De Los Santos' sixth amendment rights.

### A.

In *Roviaro*, the Supreme Court examined the government's privilege to refrain from disclosing the identity of an informant. The Court found that the purpose of this privilege is to promote effective law enforcement; citizens are encouraged by their guaranteed anonymity to communicate information concerning the commission of crimes to law enforcement officials. *Roviaro*, 353 U.S. at 59, 77 S.Ct. at 627. However, fairness to the defendant restricts the scope of the privilege. Thus, the privilege is not applicable to any communications if the information will not reveal the informer's identity, if the identity of the informant is already known, or if the informant or the identity is relevant and helpful to the defense of the accused. *Id.* at 60–61, 77 S.Ct. at 627–28. Because of the competing interests, the Court held that there should be a

> balancing [of] the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the

possible significance of the informer's testimony, and other relevant factors. *Id.* at 62, 77 S.Ct. at 628–29.

This circuit, in numerous cases applying *Roviaro*, has established a three-part test to determine whether disclosure is mandated. *See United States v. Diaz*, 655 F.2d 580, 586 n. 4, 587–89 (5th Cir.1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). First, we evaluate the level of the informant's involvement in the alleged criminal activity. *Id.* at 588; *United States v. Ayala*, 643 F.2d 244, 246 (5th Cir.1981); *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir.1979). The more active the participation, the more likely disclosure will be required. *Ayala*, 643 F.2d at 246. On the other hand, if the informant's participation is minimal, it favors nondisclosure. *Gonzales*, 606 F.2d at 75. Finally, if "the evidence shows that an informer is a mere tipster, no disclosure of his identity is required." *United States v. Freund*, 525 F.2d 873, 876–77 (5th Cir.), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976). The second factor considers the helpfulness of disclosure to any asserted defense. *Ayala*, 643 F.2d at 247. The defendant is required to make a sufficient showing that the testimony would significantly aid the defendant in establishing an asserted defense. *Diaz*, 655 F.2d at 588. "[M]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *Gonzales*, 606 F.2d at 75. The third consideration is the government's interest in nondisclosure. *Diaz*, 655 F.2d at 588–89. The government's interest relates to both the safety of the informant and the informant's future usefulness to the authorities as a continuing confidential source. *See Ayala*, 643 F.2d at 247 (citing *United States v. Toombs*, 497 F.2d 88 (5th Cir.1974)).

When there are conflicting interests and when necessary to properly balance these three interests, we have held that the court may conduct an *in camera* hearing. *Freund*, 525 F.2d at 877. This "limited disclosure of identity and information to the trial judge recognizes the government's interest in maintaining anonymity while at

the same time insuring the appellant's interest in developing the testimony of every witness who possesses facts which could control his claim of an illegal search and seizure." *Id.*

■ With this background, we now must consider whether the *Roviaro* balancing test required the district court to disclose the identity of the informant or the information supplied by the informer.[5] The standard of review of a district court's decision to grant or to deny disclosure of an informant is whether the court abused its discretion. *See United States v. Gray,* 626 F.2d 494, 500 (5th Cir.1980), *cert. denied,* 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981); *United States v. Alexander,* 559 F.2d 1339, 1344 (5th Cir.1977), *cert. denied,* 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978). To properly balance the interests in this case, it was necessary to know the substance of the information possessed by the informant. The *in camera* proceeding was the appropriate method of examining the information and balancing the interests. In reviewing the testimony of this *in camera* proceeding, as well as other relevant evidence, we do not believe the district court abused its discretion in deciding that the informant's identity should not be disclosed.

Admittedly, the level of involvement of the informant is not insubstantial. The connection between Castro and De Los Santos existed only because of the informant. Castro was told that De Los Santos would be in a certain area at a certain time to pick up drugs. Without the information, Castro would not have been waiting for De Los Santos. There is also other involvement of the informer that was revealed at the *in camera* proceeding that supports disclosure, but to reveal it would most likely disclose the identity of the informant. On the whole, though, this factor favors disclosure of the informant.

The next factor is whether De Los Santos has made a sufficient showing that the informer's information would significantly aid him in establishing an asserted defense. In his request for disclosure, De Los Santos asserted no defense to the charge of possession with intent to distribute heroin, but only stated: "Defendant is entitled to disclosure ..., where it is relevant and helpful to his defense." Mere supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure; rather, "[t]he defendant must show that the informant's testimony would significantly aid in establishing an asserted defense." *United States v. Kerris,* 748 F.2d 610, 614 (5th Cir. 1984) (citing *Diaz,* 655 F.2d at 588). De Los Santos has made no such showing. Therefore, this factor does not support disclosure. *Compare Ayala,* 643 F.2d at 247 (the defendant's contention "that the testimony of the informer, who allegedly had a closer view of the jogger [who sold the drugs] than the agent, would be directly relevant to proving he was not the jogger and would cast doubt on the agent's identification;" this contention was a sufficiently specific demonstration of the relevancy and potential helpfulness of the informer's testimony to warrant disclosure) *with Gonzales,* 606 F.2d at 75 ("the mere allegation of entrapment is not sufficient in and of itself to force disclosure").

Finally, we must examine the government's interest in nondisclosure. The district court considered this factor to be important. We agree that it is. There was evidence that De Los Santos had been violent before, and there were indications that he could be violent again. Therefore, the safety of the informant is potentially at risk. The court also heard testimony regarding the future usefulness of the informant, discovering that he was involved in several ongoing criminal investigations that would be jeopardized by disclosure.

---

5. We note that De Los Santos does not directly argue for disclosure of the informant's information, but rather argues that he has the right to confront his accuser. However, this desire to confront the informant, or, as in this case, the information supplied by the informer, necessarily implicates the issue of whether the identity of the informant should be disclosed. Therefore, the *Roviaro* issue is an initial concern that must be addressed.

We agree that the governmental interest weighs strongly against disclosure.

In sum, the interests balance toward non-disclosure. Although the participation of the informant supports disclosure, De Los Santos did not show that the informant's testimony would significantly aid in establishing an asserted defense, which cuts against disclosure, and the government's interest clearly supports nondisclosure. In a situation such as this where the relative interests balance toward nondisclosure, and where the district court held an *in camera* hearing at which evidence was presented that enabled the court to reach its decision, we do not believe the court abused its discretion in withholding the identity of the informant.

### B.

Having determined that the court properly withheld the identity of the informant, we must now examine De Los Santos' claims that his sixth amendment right to a public trial and his right to confront his accuser were violated. De Los Santos argues that being excluded from the hearing violated these sixth amendment rights.[6]

■■■ The sixth amendment provides the accused with the right to a public trial. *See, e.g., Waller,* 467 U.S. at 43, 104 S.Ct. at 2214, 81 L.Ed.2d at 36; *Rovinsky v. McKaskle,* 722 F.2d 197, 199 (5th Cir.1984). The public trial guarantee helps fulfill the central aim of the criminal proceeding: to ensure that the accused is tried fairly. *Waller,* 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38. This explicit sixth amendment right to a public proceeding invokes the same considerations raised implicitly in the first amendment right of the press and public to attend an accused's trial. *Id.* at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38. Because of this similarity, the Supreme Court found that under the sixth amend-ment any closure of a public trial over the objections of the defendant must meet the tests set out under the first amendment analysis in *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). *See Waller,* 467 U.S. at 47, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. Moreover, the Court found that the aims and interests involved in a suppression hearing were just as pressing as those in the actual trial because such hearings often were the only trial, with defendants thereafter pleading guilty pursuant to a plea bargain. *Id.* at 46–47, 104 S.Ct. at 2215–16, 81 L.Ed.2d at 38–39. Therefore, whether the suppression hearing would be public or not was also subject to the *Press-Enterprise* standard. *Id.* at 47, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. The Court restated the standard in *Waller:*

> Under *Press-Enterprise,* the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* Thus, in narrow circumstances when an overriding interest is present, the hearing can be closed to the public.

The sixth amendment also provides an accused with the right to confront his accuser. The Confrontation Clause of the sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." One of the most basic rights guaranteed by the Confrontation Clause is the right to be present in the courtroom at every stage of the trial to confront one's accusers, *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058,

---

**6.** Since De Los Santos never requested during the suppression hearing to be present at the *in camera* proceeding, one consideration is whether he waived this issue. While we believe that De Los Santos should have requested to be present, such an omission in light of his request to be present at the hearing contained in his memorandum in support of his motion for disclosure of the identity of the informant and the fact that the waiver of a constitutional right is not lightly inferred, *see Rovinsky v. McKaskle,* 722 F.2d 197, 199–200 (5th Cir.1984), allows us to review this issue.

25 L.Ed.2d 353, 356 (1970), but this is not an absolute right. *See, e.g. id.* (if a defendant is disruptive the court can exclude him). However, this "important constitutional right of a criminally accused to be present at his trial cannot cursorily ... be deemed by the trial court to have been waived...." *United States v. Beltran-Nunez,* 716 F.2d 287, 291 (5th Cir.1983).

■ Under the sixth amendment, then, the closure of a suppression hearing must meet the four requirements of *Press-Enterprise. See Waller,* 467 U.S. at 47, 104 S.Ct. at 2216. We find that the closure in the instant case does so. First, the government advanced an overriding interest that would be prejudiced: the safety of an informant and the potential apprehension of several suspected narcotic dealers. Second, the closure was no broader than necessary to protect that interest. The *in camera* testimony consisted of a small portion of the total testimony and only considered information relevant to the informer. Also, the officers were available for cross-examination during the open suppression hearing; De Los Santos was not completely precluded from being present while they testified. Moreover, the limited *in camera* proceeding is a reasonable alternative that has been expressly adopted as acceptable by this circuit for use during a suppression hearing when the identity of an informant is at issue. *See, e.g., Freund, supra.* Finally, the court made adequate findings to support the closure. Thus, we conclude that the *in camera* proceeding utilized at this hearing was a proper exception to De Los Santos' sixth amendment right to a public trial.

De Los Santos' sixth amendment confrontation argument raises two issues. First, whether he was denied his sixth amendment right to confront his accuser because he was not provided with the identity of the informant or the information supplied by the informant. Second, whether De Los Santos' confrontation rights were violated because of his absence from a portion of the suppression hearing.

■ Regarding the identity of the informant, both the Supreme Court and this circuit have held that the government's privilege of nondisclosure overrides any sixth amendment right to the identity of an informant for purposes of confrontation. In *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Court was asked to hold that the Due Process Clause of the fourteenth amendment and the sixth amendment right of confrontation "compels Illinois to abolish the informer's privilege ..., and to require disclosure of the informer's identity in every such preliminary hearing where it appears that the officers made the arrest or search in reliance upon facts supplied by an informer they had reason to trust." *Id.* at 312, 87 S.Ct. at 1063. In response, the Court stated: "we find no support for the petitioner's position in either of those constitutional provisions." *Id.* at 313, 87 S.Ct. at 1063. In considering the sixth amendment issue, the Court reasoned:

The petitioner does not explain precisely how he thinks his Sixth Amendment right to confrontation and cross-examination was violated by Illinois' recognition of the informer's privilege in this case. If the claim is that the State violated the Sixth Amendment by not producing the informer to testify against the petitioner, then we need no more than repeat the Court's answer to that claim a few weeks ago in *Cooper v. California* [386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)]: "Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront a witness against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit." 386 U.S. p. 58, at 62, note 2, 17 L.Ed.2d 730, 734, 87 S.Ct. 788 [791 note 2.]
On the other hand, the claim may be that the petitioner was deprived of his Sixth Amendment right to cross-examine the arresting officers themselves, because their refusal to reveal the informer's identity was upheld. But it would follow from this argument that no witness on

cross-examination could ever constitutionally assert a testimonial privilege, including the privilege against compulsory self-incrimination guaranteed by the Constitution itself. We have never given the Sixth Amendment such a construction, and we decline to do so now.

*Id.* at 313–14, 87 S.Ct. at 1064. We find this decision to be controlling and hold that De Los Santos was not denied his sixth amendment right to confront his accuser when the government did not release the identity of the informant, or the information supplied by the informant. *See also United States v. Valenzuela-Bernal*, 458 U.S. 858, 870, 102 S.Ct. 3440, 3448, 73 L.Ed.2d 1193, 1204 (1982) ("While *Roviaro* was not decided on the basis of constitutional claims, its subsequent affirmation in *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), where both due process and confrontation claims were considered by the Court, suggests that *Roviaro* would not have been decided differently if those claims had actually been called to the Court's attention.").

This circuit has also held that the defendant's sixth amendment right to assistance of counsel and to confront witnesses against him is not violated by an *in camera* proceeding used to determine whether the disclosure of an informant's identity would benefit the defense and therefore should be revealed. *See United States v. Doe*, 525 F.2d 878, 880 (5th Cir.), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976). *See also Gray*, 626 F.2d at 499–500 (holding that the sixth amendment right to confrontation does not prevent a judge from refusing to allow disclosure of a witness' address or place of employment when the value of the evidence is outweighed by the safety of the witness). The Ninth Circuit has apparently adopted this position. *See United States v. Anderson*, 509 F.2d 724, 728–30 (9th Cir.) (the defendant argued his sixth amendment right of confrontation and his fifth amendment right to due process of law were violated by an *in camera* hearing to determine whether to disclose the identity of the informant; the court disagreed), *cert. de-*

*nied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). Thus, we are constrained by precedent to hold that De Los Santos' sixth amendment right to confront his accusers was not violated by not being present at the *in camera* hearing.

■ De Los Santos also contends that because he was not present during all portions of the suppression hearing, his sixth amendment right of confrontation was violated. On the facts of this case, we do not agree. First, De Los Santos was presented with a full opportunity to confront his accuser during the suppression hearing. De Los Santos was given the opportunity to cross examine Castro on the reliability and trustworthiness of the informant. Also of some importance was the limited nature of the closure and the fact that it was a pretrial hearing and not a trial on the merits. Moreover, it was impossible to hear all the probable cause testimony in open court without jeopardizing the identity of the informant. Finally, the nature of the testimony elicited at the closed portion of the hearing was very unfavorable to De Los Santos. All of these factors, under the circumstances of this case, convince us that De Los Santos' sixth amendment confrontation right was not violated.

We hold, therefore, that the *in camera* hearing does not violate De Los Santos' sixth amendment rights to a public trial and to confront his accusers.

### III.

De Los Santos' next arguments are that his arrest and the search and seizure were violations of his fourth amendment rights. He first contends that the government did not have probable cause to arrest him. He then argues that even if probable cause existed for the arrest, the warrantless searches of the automobile and the bag were unconstitutional. We disagree.

### A.

■ It is well established that warrantless searches and seizures are unreasonable under the fourth amendment. *United*

*States v. Shaw,* 701 F.2d 367, 376 (5th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984). There are, however, exceptions to this principle. *Id.* Thus, "[t]he Fourth Amendment does not require a warrant for an arrest made on probable cause." *United States v. Fortna,* 796 F.2d 724, 739 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986). Probable cause "exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Antone,* 753 F.2d 1301, 1304 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). The arresting officer does not have to have personal knowledge of all the facts constituting probable cause; it can rest upon the collective knowledge of the police when there is communication between them. *United States v. Webster,* 750 F.2d 307, 323 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985). The arrest, therefore, proper even though the arresting officer, Rangel, received the information from another officer, Castro.

Since probable cause is based upon an informant's tip, *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), provides the applicable standard of review. Under *Gates* we must examine the "totality of the circumstances" to determine whether the informant's tip provided probable cause to arrest De Los Santos. *Id.* at 238, 103 S.Ct. at 2332. This inquiry involves "a practical, common-sense decision whether, given all the circumstances ..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332.

■ We believe that the officers had probable cause to believe that contraband would be found, and therefore they properly stopped and arrested De Los Santos. First, Castro knew that De Los Santos had

dealt in heroin on previous occasions. He then received a tip from an informant who Castro knew and who had provided reliable information in the past. The informant told Castro that De Los Santos would travel to a certain area to store drugs and would pick them up the next day at a certain time. As predicted by the informant, the next morning De Los Santos arrived in the neighborhood in the same vehicle he had been in before. The agents observed him go to a residence and stay there for only two to four minutes. This surveillance, therefore, corroborated information provided by the informant.

Moreover, Castro testified *in camera* as to other information that the informant supplied. This information also is supportive of probable cause. As in *McCray:*

> the officer[s] in this case described with specificity "what the informer actually said, and why the officer thought the information was credible." ... The testimony of each of the officers informed the court of the "underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant ... was 'credible' or his information 'reliable.'"

*McCray,* 386 U.S. at 304, 87 S.Ct. at 1059 (citations omitted). Thus, under the totality of the circumstances test, "[t]here can be no doubt upon the basis of the circumstances related by [Castro], that there was probable cause to sustain the arrest...." *Id.*

### B.

De Los Santos also questions the propriety of the search of the automobile. He argues that the warrantless automobile search was unreasonable and did not comport with the fourth amendment. We also disagree with this contention. We have previously stated:

> A warrantless search of an automobile stopped by police officers who have probable cause to believe that an automobile contains contraband is permissible under

the fourth amendment. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This principle was reaffirmed and clarified in the Supreme Court's decision in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), holding that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the automobile that is as thorough as a magistrate could authorize by warrant. Based on these cases, it follows that if the police officers, through their collective knowledge, had probable cause to believe that contraband was contained in Mendoza's automobile, their warrantless search of that automobile and the seizure of the thirty pounds of cocaine found therein, was lawful.

*United States v. Mendoza*, 722 F.2d 96, 100 (5th Cir.1983) (footnote omitted). Based on our previous discussion of the facts that support probable cause to arrest, we conclude that probable cause also existed to search the vehicle.

De Los Santos argues, though, that the agents could have obtained a search warrant because the informant provided the information the evening prior to the arrest. Moreover, he asserts that there were no exigent circumstances that would allow the warrantless search. Again, we do not find these arguments persuasive.

■ First, the failure to obtain a warrant does not taint the validity of the search; it is just one factor to consider. *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir.1983). Also, the agents could not be certain that the tip was accurate until De Los Santos actually arrived at the suggested site. Probable cause did not arise until the morning of October 29th when the officers observed De Los Santos return to the neighborhood. At that point the information was corroborated. As we have previously observed, "[s]ince the officers were [in the area] attempting to corroborate the informant's tip to justify obtaining a search warrant, they cannot be faulted for failing to have one in their possession at that time." *United States v. Reyes*, 792 F.2d 536, 540 (5th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 191, 93 L.Ed.2d 124 (1986).

■ Related to De Los Santos' assertion that the officers should have obtained a warrant is his claim that exigent circumstances were not present. De Los Santos argues that they were manufactured to allow a warrantless automobile search. The agents, he contends, manufactured the exigency by allowing him to drive away. This contention has no merit. When De Los Santos first arrived in the neighborhood that morning, his destination was unknown. The information was only that he was going to go to "a house" to pick up heroin. The agents had to follow him to determine where he was going. Once De Los Santos arrived at 302 West Malone Street, he only stayed for two to four minutes. The agents then searched the house, and, after finding no drugs, reasonably believed that, as the informant had stated, De Los Santos had picked up the drugs. Immediately thereafter the order was given to stop him. This is not an example of "manufactured exigency." *See United States v. Mitchell*, 538 F.2d 1230, 1233 (5th Cir.1976) (en banc) (rejecting the argument that the automobile exception to the warrant requirement was deliberately planned).

■ De Los Santos' last attempt at reversal is his argument that the warrantless search of the paper bag was unreasonable. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), belies this contention. In *Ross* the Court considered whether police officers who had legitimately stopped an automobile and who had probable cause to believe contraband was concealed somewhere in it, could search the compartments and containers within the vehicle whose contents were not in plain view. The Court held: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."

*Id.* at 825. The search of the paper bag was reasonable and did not offend the fourth amendment constitutional rights of De Los Santos.

## IV.

For the foregoing reasons, we reject De Los Santos' arguments that he was deprived of his constitutional rights and that the district court erred in the denial of motions to suppress the evidence and to disclose the identity of the informant.

The judgment of conviction is AFFIRMED.